## No. 12,005.

STATE OF LOUISIANA EX REL. CHARLES A. BUTLER, DISTRICT ATTORNEY FOR THE PARISH OF ORLEANS, VS. HONORABLE JAMES C. MOISE, JUDGE OF SECTION " B," CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS.

| 48 | 109 |
|----|-----|
| 48 | 145 |
| 48 | 109 |
| 52 | 1308 |
| 48 | 109 |
| 116 | 233 |
| 48 | 109 |
| 120 | 668 |

Under the laws and jurisprudence of the State of Louisiana the District Attorney for the parish of Orleans has not the right to enter a *nolle prosequi* in a criminal ·proceeding, after the conviction of the accused is completed, by the final disposition of all declinatory and intermediate pleas and motions, and the pardoning power of the Governor has become operative.

There are three stages in a criminal prosecution, viz.:

The inauguration or preliminary stage, where the indictment is absolutely· under the control of the prosecuting officer.

The trial of the cause, and its incidents, during which the court has control, and the power of the prosecuting officer is suspended.

The period between the verdict of the jury and the sentence by the court, when the pardoning power supervenes.

APPLICATION for Writ of *Mandamus.*

Relator in *propria persona.*
*Lionel Adams* of Counsel.

Respondent in *propria persona.*
M. J. *Cunningham,* Attorney General, *E. Howard McCaleb* and *R. H. Brown* for Respondent.

Submitted on briefs December 7, 1895.
Opinion handed down December 21, 1895.

The opinion of the court was delivered by

WATKINS, J. The grounds upon which the relator demands relief are best stated in the phraseology of his own petition, which we reproduce in its entirety, to-wit, viz.:

' *To the Honorable Chief Justice and Associate Justices of the Supreme Court of the State of Louisiana:*

"The petition of the State of Louisiana on the relation of Charles A. Butler, District Attorney for the parish of Orleans, with respect represents:

"That there is now pending before Section B of the Criminal District Court for the parish of Orleans, of which the Honorable James C. Moise is the presiding judge, a certain prosecution, entitled No. 23,012, State of Louisiana vs. Henry Bier, indictment for perjury; which said prosecution has been duly allotted to Section B of said Criminal District Court, and of which the said court has jurisdiction.

"Your relator further avers that said Henry Bier, after having been duly arraigned and having pleaded to said indictment, was duly put upon his trial in said Section B of said Criminal District Court presided over by said Honorable James C. Moise, upon said indictment for perjury, and was duly convicted by a jury empaneled and sworn, and that subsequently, upon motion of said Henry Bier, a new trial was asked for and refused.

"Your relator further avers that subsequently, to-wit, on the 23d day of November, 1895, no judgment having yet been pronounced upon said Henry Bier, by reason of the verdict of the jury, hereinabove stated, upon said indictment, your relator, in furtherance of the ends of public justice, presented to the Honorable James C. Moise, Judge of said Section B of said Criminal District Court, the said court then being duly opened and in session, a formal motion to *nolle prosequi* the said pending prosecution of the State of Louisiana vs. Henry Bier, and for and on behalf of the State of Louisiana, declared that he would no further prosecute the said cause, which said motion your relator was duly authorized and empowered to present by virtue of the power in him vested by law as District Attorney for

the parish of Orleans, and respectfully asked that said motion be filed and spread upon the minutes of said court, and that in obedience thereto a *nolle prosequi* be entered in said cause, and that said Henry Bier be discharged without day, and that thereupon the said Hon. James C. Moise, Judge as aforesaid, directed an entry to be made on the minutes of said court, refusing to permit the filing of said motion at this time, and fixing Tuesday, November 26, as the date for the hearing of evidence in the matter.

"Your relator further avers that on the said 26th day of November, 1895, the said Hon. James C. Moise, Judge of Section B of said Criminal District Court, the said court being then duly opened and in session, proceeded to take evidence in said matter, after having first overruled a formal objection interposed by your relator on behalf of the State of Louisiana, to the effect that said evidence was irrelevant to the issue before the court, and therefore inadmissible, and after the hearing of said evidence the court refused to order the filing of said motion, or the spreading of the same upon the minutes, and the making of the same part of said record. Your relator further avers, that notwithstanding that said motion was couched in respectful language and otherwise unobjectionable in form, and that no judgment had as yet been pronounced upon said Henry Bier, by reason of the verdict of the jury upon said indictment, and that it was the duty under the law of said judge to direct the filing of said motion and the spreading of the same upon the minutes and to make the same part of said record, whatever might be his subsequent action thereon, he has arbitrarily and unwarrantably refused to allow the said motion to be filed, or to be spread upon the minutes, thereby denying to your relator, on behalf of the State of Louisiana, the exercise of a legal and official right.

"Your relator annexes hereto a copy of said motion, presented by him as District Attorney for the parish of Orleans to the said Hon. James C. Moise, judge of Section B of said Criminal District Court, together with all the exhibits attached to said motion, as well as certified copies of the minutes of said court of November 23 and 26, 1895, and makes the same part of this petition.

"Your relator further avers, that due notice was served verbally in open court upon the said Hon. James C. Moise, judge as aforesaid, notifying said judge of your relator's intention to apply to the Honorable the Supreme Court for a writ of *mandamus* in said matter.

" Wherefore, the premises and annexed affidavit considered, your relator respectfully prays that a writ of *mandamus* issue, directed to the Hon. James O. Moise, judge of Section B, of the Criminal District Court for the parish of Orleans, ordering and commanding him to direct the filing, spreading upon the minutes, and making part of the record in the case of the State of Louisiana vs. Henry Bier, No. 23,012 of the docket of the said Criminal District Court, the motion hereinabove referred to, so that the said motion, when so filed and spread upon the minutes, shall be considered, taken and held to be part of the record in said cause; and relator prays for all such further orders, aid and relief as may be needful in the premises.

" CHAS. A. BUTLER,
" *District Attorney, Parish of Orleans.*"

It will be perceived that the *gravamen* of the relator's complaint is, that Henry Bier, having been indicted for perjury, in the court presided over by the respondent, a verdict of guilty having been rendered by the jury of trial, and a motion for new trial having been overruled, he tendered in open court a formal motion to *nolle prosequi* the case, as a pending prosecution, and " declared that he would no further prosecute the said cause." That he was duly authorized and empowered to present said motion; and, upon presenting same, he " respectfully asked that said motion be filed and spread upon the minutes of said court, and that, in obedience thereto, a *nolle prosequi* be entered in said cause, and that said Henry Bier be discharged without day." "That, thereupon, the (respondent) directed an entry to be made on the minutes of said court, refusing to permit the filing of said motion at that time, and fixed a different day for the hearing of evidence in the matter."

That after hearing evidence, the respondent refused to order the filing of said motion, or the spreading of the same upon the minutes, or the making the same a part of the record.

Having made the foregoing statement of the facts as disclosed by the record, relator makes the further averment as characterizing his right to enter a *nolle prosequi*, and, to that end, to have the written motion filed and spread upon the minutes of the respondent's court, viz.:

" Your relator further avers that, notwithstanding the aforesaid motion was couched in respectful language, and otherwise unobjec-

tionable in form, and that no judgment has, as yet, been pronounced upon said Henry Bier, by reason of the verdict of the jury upon said indictment,   *   *   *   (the respondent) has arbitrarily and unwarrantably refused to allow  said motion to be filed, or to be spread upon the minutes of his court."

To his petition the relator annexes the motion to *nolle prosequi*, which was tendered, and the filing of which was by respondent declined.

It is of the following purport, substantially, viz.: that relator comes into court, in the case of State vs. Henry Bier, No. 23,012, and " *gives the court here to understand and be informed* that," for certain causes and reasons therein recited as being satisfactory to himself, " *he now enters a nolle prosequi* " in the aforesaid cause, " *and prays that said Henry Bier be discharged without day*." (Our italics.)

It is quite evident that the relator assumed the right, under the circumstances related, to act independently of the respondent and enter a *nolle prosequi* upon his own motion, particularly in view of the fact that his offer to file his motion was accompanied with the declaration " that he would no further prosecute the said cause;" and the allegation of the motion was, that " he gives the court to understand and be informed that he now enters a *nolle prosequi*, and prays that said Henry Bier be discharged without day."

It was his intention and expectation, that the motion, once it was filed and spread upon the minutes of respondent's court, would take effect immediately, and irrevocably operate an absolute *discharge* of Bier, and leave nothing to be thereafter done but the performance of the purely ministerial duty of releasing him from confinement and setting him at liberty, and, this duty not having been performed by the respondent, recourse could be had to *mandamus*.

The respondent's return makes a similar showing as to the condition of the record in the case of State vs. Henry Bier, and he thereto annexes a certified copy of the indictment against the defendant and extracts from the minutes of his court, showing its exact *status* at the date the relator tendered his motion to discharge the defendant on a *nolle prosequi*.

Referring to the circumstances under which the relator's applicacation was made, and the character of relator's motion to enter a *nolle prosequi*, the respondent says that " it will be observed that

8

this document does not ask leave of the court for its filing, nor that it be spread upon the minutes of the court; the contention of the District Attorney being that the entry of a *nolle prosequi* was not subject to judicial control (and) that he had an absolute right to enter the *nolle prosequi.*" "And the document was drawn in this form presumably to accentuate and give force to this idea."

Regarding the District Attorney's motion in this light—and this supposition of the respondent is entirely justified by the declaration of that officer, made contemporaneously with his proposal to enter a *nolle prosequi*, and by the averments of his petition herein—he declares in his return "that a *nolle prosequi* in criminal proceedings is a declaration of record from the legal representative of the government, that he will no further prosecute (a) particular indictment, * * and that to be effective it must be put of record." That "the District Attorney has no right, power or authority to have a *nolle prosequi* entered in any case of guilt, as to a felony, without the consent of the court," and that "it is *universally conceded that the judicial control begins after empanelment and swearing the jury.*"

He further returns that, as under Art. 66 of the Constitution the pardoning power is lodged in the Governor, "after conviction," upon a recommendation of the Board of Pardons, the relator had not, at the stage of the proceedings indicated, the power or authority to release a convict; and for a prosecuting officer to assume such a power, *even with the consent of the court, would be usurpation on the part of the judiciary.*

"If the court has the power to protect the constitutional rights of the prisoner under Art. five (5), it has the power to preserve the constitutional prerogative of the Governor under Art. sixty-six (66). During the course of a criminal trial the court will see that both provisions of the Constitution are protected from encroachment (and) preserved from violation. Respondent affirms that, after the verdict of the jury, the *pardoning power alone* can release the prisoner, and this he now proposes to show"—citing authorities.

After summarizing the authorities and applying them to the issues raised, the respondent sets out his reasons *in extenso* in support of the *impolicy* of permitting the District Attorney to enter a *nolle prosequi* at a stage of the proceedings when its entry would operate a *discharge* of the defendant if, in law, he had the right to do so.

These proceedings present to this court for consideration and judgment two questions:

1. Whether a District Attorney has the power conferred upon him by law to enter a *nolle prosequi.* with or without the consent of the court, in a criminal case, after the jury of trial has rendered a verdict of guilty, and a new trial has been applied for and refused, though no formal judgment of the court has been signed and no sentence has been pronounced.

2. If, as matter of law, the District Attorney has not the right, at such stage of proceedings, to enter a *nolle prosequi* which will, of his *own motion, discharge* the accused from custody, has he the legal right to have such motion to *nolle prosequi* filed among the records in such cause, and spread upon the minutes of the court, against the will of the judge presiding at the trial?

The District Attorney, as relator, contends for the affirmative of both propositions, while the District Judge, as respondent, contends for the negative of both.

The first proposition overshadows the second. It is a new question in our jurisprudence, and one of incalculable importance not only to the accused, but to the administration of public justice. As its determination seems to raise a question of constitutional power and jurisdiction, that issue must be disposed of first—it being, as above outlined, whether relief could be afforded the defendant by the court and the District Attorney, or by the Governor alone, upon recommendation of the Board of Pardons.

I.

Art. 66 of the Constitution of 1879 provides:

"The Governor shall have power to grant reprieves for all offences against the State, and, except in cases of impeachment or treason, shall, upon recommendation in writing of the Lieutenant Governor, Attorney General and presiding judge of the court before which conviction was had, or of any two of them, have power to grant pardons, commute sentences and remit fines and forfeitures after conviction. In cases of treason he may grant reprieves until the end of the next session of the General Assembly, in which body the power of pardoning is vested."

To determine *when* the grant of power conferred upon the Governor by that article may be exercised, depends upon the proper in-

terpretation of the phrase "after conviction," which is therein employed. If it signifies simply the verdict of a jury convicting the accused of the crime charged against him in the indictment, the view of the respondent is correct; but, if it be necessary that a judgment of the court pronouncing sentence should be formally signed, in order that there be a conviction, the contention of the relator is correct. It is but reasonable to assume that the judicial and legislative interpretations which have been placed upon like terms occurring in statutes of the State, and decisions of this court, should be applied to such terms in the organic law; and that similar terms employed in other articles of the same instrument may be consulted in order to test and determine the purpose had in view by the framers of that instrument.

On looking into our statutes we find something which will throw light upon the question.

For instance, it is said:

" And whenever the jury shall return a verdict qualified as aforesaid, the person *convicted* shall be *sentenced*," etc. Revised Statutes, Sec. 1000.

Again:

" If final judgment has been rendered upon any indictment, * * * an appeal may be taken on behalf of the accused from such judgment, returnable to the Supreme Court, as in civil cases." *Ib.*, Sec. 1001.

Again:

" The judges of the several courts * * * are hereby authorized and empowered to *sentence* all persons under fifteen years of age *convicted* of crimes," etc. *Ib.*, Sec. 1006.

Again:

" In all cases when persons *convicted* of crimes shall be *sentenced* to death," etc. *Ib.*, Sec. 1007.

Again:

" Persons in confinement, under a judgment of conviction in a criminal prosecution from which an appeal has been taken, shall have the right to make it returnable," etc. *Ib.*, Sec. 1905.

And, finally, the statute which fixes the fees of the District Attorney for the parish of Orleans employs this language, viz.:

" For each *conviction* on which the accused is *finally sentenced;*" and "that he shall not be paid his fee or commission until the *sentence* has become final on appeal." Sec. 1 of Act 29 of 1890.

All of these statutes seem to lead to the supposition that " conviction" is a stage of the proceedings which precedes the judgment or sentence of the court; and that the latter serves merely as the basis of an appeal or execution, and not to enlarge the verdict or aid in the determination of the guilt of the accused.

To illustrate:   In case of an acquittal by a jury there is no judgment signed, yet, in the event of a future prosecution for the same offence, the record would furnish complete proof of the plea of *autrefois acquit;* and this would be equally true of *autrefois convict.*

On this subject a familiar text writer says:

"An acquittal, even without the judgment of the court thereon, is a bar    *    *    *    Ordinarily, however, a verdict of guilty will sustain the plea.   A plea of guilty need not, to be a bar, have a judgment rendered on it."   Wharton's Crim. Plead. and Practice (8th Ed.), Sec. 435.

Again:

" In States where a defendant is held to be in jeopardy by a conviction, a conviction without a judgment is a bar."   *Ibid.*, Sec. 435, par. 4.

He further says:

" In other words, at common law, as the rule is applied in England, when there has been a final verdict, either of acquittal or conviction on an adequate indictment, the defendant can not a second time be placed in jeopardy for the particular offence."   *Ibid.*, Sec. 490.

Another text writer expresses the same idea in slightly different phraseology, thus:

"A verdict or plea of guilty constitutes, in law, a conviction."

And he thereupon formulates the following rule, viz.:

"And it is settled law in England and our States that as a foundation for the plea of *autrefois convict* sentence on the verdict is not material, though it may be necessary to show in some way by the record that the cause is ended."   1 Bishop's Crim. Proc., Sec. 814; *Vide* 4 Blackstone, 336.

It is thus apparent that our statutes are in accord with the opinion of text writers, to the effect that sentence by the court is not essential to the completion of a " conviction," and is not a necessary precedent to the exercise of pardoning power.

This declaration is fortified by the statement of the author first quoted, contained in these words, viz.:

"After verdict the entry of a *nolle prosequi*, either with or without the consent of the court, as the local statutes may prescribe, is the usual method of either recording executive clemency, or of disincumbering the case from embarrassing surplus charges. In either case such *nolle prosequi* may be viewed as a pardon." Wharton's Crim. Plead. and Prac. (8th Ed.), Sec. 448.

This necessarily implies that "after verdict" the case is closed, the guilt of the accused established by the verdict, and nothing short of the exercise of the pardoning power can relieve the accused; and this power the Constitution has conferred upon the executive " after conviction."

And certainly no statute can enlarge or diminish this constitutional grant of power, and its exercise must remain vested in the discretion of the Governor to be exercised independently like that of the legislative or judicial departments of the government is exercised.

The language of the article of the Constitution above quoted is in keeping with the statutes we have referred to, and the text of the authors cited, for it declares that "the Governor shall have power to grant reprieves for all offences against the State," and that he "shall have power to grant pardons, commute sentences and remit fines and forfeitures after conviction." Art. 66.

The identical words " after conviction" occur in Art. 9 of the Constitution, and the provisions of same may be examined and considered in determining the meaning of those in Art. 66.

Art. 9 declares as follows:

"All persons shall be bailable by sufficient sureties    *    *    * unless after conviction, for any crime or offence punishable with death, or at hard labor."

What is the correct interpretation of that article? If the words " after conviction " in that article mean a judgment or sentence of conviction, then all persons found guilty of penitentiary offences by the verdicts of juries are, upon furnishing bonds, entitled to their liberty until sentences shall have been pronounced and judgments duly signed; but, if "after conviction" signifies after the verdict of a jury, persons thus convicted must be incarcerated in jail immediately after verdict has been rendered.

It has been the constant practice, under that article, and we are advised of no precedent to the contrary, to imprison all persons convicted of penitentiary crimes, as soon as verdicts shall have been rendered, and refuse them the right of bail altogether.

This course was confessedly pursued in the case of State vs. Henry Bier—the defendant having been incarcerated in jail ever since the verdict of the jury finding him guilty was rendered, although no sentence has been imposed or judgment signed.   He has not been granted the right of bail.  If it were true that the words "after conviction," occurring in Art. 9, mean after sentence, or a judgment of conviction has been signed, Bier is illegally detained in jail and is entitled to his liberty on furnishing bond.

But such is not the application before the court.   He does not rest his claim to a discharge from custody on that ground.   His contention is that, by the effect of the District Attorney's *nolle prosequi*, he is entitled to be set at liberty.   This necessarily implies that his imprisonment previously to the *nolle prosequi* was legal, and this is an admission that the interpretation which has been placed upon the words "after conviction" in Art. 9 is correct.

Accepting that interpretation as correct, why should not the words "after conviction," occurring in Art. 66, receive a like interpretation?  We can perceive no reason why they should not.  Art. 104 of the Constitution of 1812 is couched in identically the same language as Art. 9 of the present Constitution is; and it was given an interpretation by our predecessors precisely similar to that suggested above as to Art. 9.

In State vs. Vion, 12 An. 688, the court said:

"Jules Pompeville, having been convicted of larceny, was, after conviction, permitted to give bond, with Jean Remy Vion as surety for his appearance to receive and submit to such sentence as might 'be passed upon him by the District Judge.'

"The prisoner, having failed to appear when called to receive the sentence of the law, the bond was declared forfeited.

"It is urged on behalf of the appellant that the bond, having been exacted in violation of a prohibitive article of the Constitution, carries with it no obligations.

"It is evident that the District Judge had no right to exact the bond or to receive it when tendered, the offence of which the prisoner was convicted being punishable by imprisonment at hard labor."

The court then added, that the prohibition of the article of the Constitution "was intended to place beyond the reach of legislative control, or judicial action, a principle of public policy, which, in the case at bar, has been violated."

In State vs. Wilson, 14 An. 450, the court had under consideration the liability of a surety upon an appearance bond of a party who had been convicted of a misdemeanor and had thereafter failed to respond, and the court say:

" It is evident that the object of the court in ordering the accused to be called, was to pass sentence upon him in a case in which he had been convicted," etc.

The terms of the bond were: That the accused should personally appear before the court on the date mentioned, " then and there to answer unto two charges brought against him, * * and shall not depart without leave of the court until the final trial and conviction or acquittal of the said Wilson. * * The accused was in the custody of his security according to this bond, until the verdict of the jury pronounced him guilty. But after this his responsibility ended. The accused was in the court room when he was convicted, and did not depart therefrom until a short time after his conviction."

The court then makes this further observation, viz.:

" Blackstone says, if the jury find the accused guilty, he is then said to be convicted of the crime whereof he stands indicted, which conviction may accrue in two ways, either by his confessing the offence and pleading guilty, or by his being found so by the verdict of his country. Blackstone, book IV, page 362. After trial and conviction the judgment of the court regularly follows, unless suspended or arrested by some intervening circumstance. Blackstone, book IV, page 365. * * *

" It is evident from the authorities that the conviction was perfectly accomplished when the jury rendered the verdict of guilty," citing 1st Chitty's Crim. Law, pp. 601, 648, 653.

The principles announced by the court as controlling those two decisions appear to our minds to be correct and well grounded, and we are not aware of same having been overruled, or those precepts gainsaid.

Mr. Bishop, in his treatise on Statutory Crimes, says: " The word ' conviction ' signifies the finding of the jury, by verdict, that the defendant is guilty." Vide Sec. 348; 1 Bishop's Crim. Proc., Secs. 252-253; 1 Bishop's Crim. Law, Sec. 903; 2 Bishop's Crim. Law, Sec. 993.

In Commonwealth vs. Lockwood, 109 Mass. 323, an interpretation is given of a constitutional provision quite similar to our Art. 66, and

in a case quite similar to that of State vs. Bier. The statement of that case is as follows, viz.:

The defendant was tried on an indictment which charged him with cheating with false pretences, and a verdict of guilty was returned and an appeal was prosecuted therefrom. Before a decision of the case on appeal was rendered, the defendant presented a pardon, granted by the Governor, and demanded a discharge. To this plea the District Attorney demurred that the pardon was granted while the appeal was pending " and before any judgment had been rendered by said Superior Criminal Court, or any conviction had on said indictment, and was and is null and void."

Mr. Justice Gray, as organ of the court, said:

" This case presents an interesting question of the extent of the power conferred by that provision of the Constitution of the commonwealth which declares that 'the power of pardoning offences, except such as persons may be convicted of before the Senate by impeachment of the House, shall be in the Governor by and with the advice of the council, but no charter of pardon granted by the Governor. with advice of the council, before conviction, shall avail the party pleading the same, notwithstanding any general or particular conditions contained therein,' etc. Const. of Mass., Chap. 2, Sec. 1, Art. 8."

The court then proceeds:

" The ordinary legal meaning of ' conviction,' when used to designate a particular stage of a criminal prosecution triable by a jury, is the confession of the accused in open court, or the verdict rendered against him by the jury, which ascertains and publishes the fact of his guilt; while 'judgment' or 'sentence' is the appropriate word to denote the action of the court before which the trial is had declaring the consequences to the convict of the fact thus ascertained."

The court cites Blackstone, as well as comparative extracts from the Massachusetts statutes and those of the United States. They quote Commonwealth vs. Richards, 17 Pickering, 295; Commonwealth vs. Andrews, 2 Mass. 409; Commonwealth vs. Gorham, 99 Mass. 420; Commonwealth vs. Brown, 4 Mass. 580; Commonwealth vs. Ladd, 15 Mass. 526; Commonwealth vs. Mash, 7 Mass. 472, and Commonwealth vs. Green, 17 Mass. 515.

The court then summarizes its conclusious thus:

" Even when no judgment whatever has been rendered and no ac-

tion had by the court, after the acceptance and recording of the verdict, no instance has been found in which a pardon granted, after verdict, has been disputed or disallowed. And our records show, that, in very many cases, upon the production of a pardon granted by the executive at that stage, the court has discharged the defendant."

The conclusion of the court was unanimous, to the effect that "the pardon of the defendant (was) valid," and he was discharged.

The same question arose in Virginia, and in Blair vs. The Commonwealth, 25 Grattan, 850, the question as to the Governor's power to pardon a convicted person "before judgment was rendered against him therefor," was decided the same way.

The court said:

"The Governor's power to pardon is conferred by the Constitution * * * which declares that he shall have power * * * to grant pardons and reprieves *after conviction;*" and then propounds this question, viz.:

"Can the Governor, under this constitutional provision, pardon a person for an offence, after he has been found guilty thereof by the verdict of a jury, but before sentence is pronounced on such verdict? Or, which is the same thing, do the words 'after conviction,' in the said provision, refer to the *verdict* of the jury, or to the *sentence* in such case?"

This is the question we now have to solve. On a careful consideration and analysis of authority, the court was of opinion that the Governor had the constitutional power to grant the pardon of the defendant prior to sentence, and overruled the demurrer of the Commonwealth and sustained the plea.

From the foregoing compilation of authorities, the conclusion seems to be irresistible, that the word "conviction," which occurs in Art. 66 of the Constitution, signifies that the defendant's guilt has been ascertained by the verdict of the jury, and not that the sentence of the law has been pronounced by the court.

This seems quite reasonable, as the *verdict* evidences the final action of the *jury*, who are the exclusive judges of the defendant's guilt; and the *sentence* is the final action of the court on the case. After sentence comes the appeal, or execution of the decree of the court. 1 Bishop Criminal Procedure, Sec. 254. It follows, as a necessary sequence of that proposition, that when an accused per-

son has been convicted, the Governor's pardoning power may be exerted; and thereby full and complete relief could be afforded to him.   The converse of that proposition would seem to be equally true, that the District Attorney's right to enter a *nolle prosequi* with the leave of the court had ceased; because the respondent and the District Attorney necessarily cease to have any control of a prosecution which has ceased, or become merged into a conviction, and a new trial has been refused.

Not only has this stage been reached in this case, but the confession of Henry Bier, which has been annexed to and made part of the respondent's return, evidences an acquiescence in the verdict of the jury which precludes the idea of an appeal.

The verdict of the jury is final and irrevocable, and there is only one further stage necessary to the final termination of the case, and that is the sentence of the court.   But we will observe that, while the right of the Governor to pardon commences after final conviction, there is no power lodged anywhere to suspend sentence to await an application of the convicted person to the board of pardons, as preliminary and prerequisite thereto.

## II.

Having reached the conclusion that the verdict of guilty is a conviction in the sense of the Constitution, and that, at this stage of the proceedings, complete relief can be afforded the defendant, Bier, by the exercise of the pardoning power, the remaining question for decision is, whether, the pardoning power being available, the District Attorney may, also, employ his *nolle prosequi* for the purpose of affording Bier relief.

The relator's contention is, that possessing all the powers of the Attorney General, he is empowered, without leave of the court, to enter a *nolle prosequi* at any stage of the proceedings.

He makes this claim upon the ground that, as the Legislature has enacted no statute in reference to the exercise of the power by the prosecuting officer to enter a *nolle prosequi*, his authority therefor is under the common law of England, by virtue of Sec. 976 of the Revised Statutes—there being no statute of this State giving power to the judge to control the entry of a *nolle prosequi*.

Having laid this premise down, relator puts to the court this proposition, viz.:

"If, as asserted, the power to *nolle prosequi* after a verdict, and before sentence, is absolute and beyond restraint or control by the court, then the respondent judge was wrong.

"If, on the other hand, his leave was necessary and could be lawfully withheld, this proceeding must fail."

This much having been premised in the way of statement, we will look into the authorities and see how the question has been treated and decided in other courts of this country, and then make a comparison thereof with our statutes and jurisprudence on the subject.

First, consulting familiar text writers, we find in the treatise of Mr. Wharton the following, viz.:

" A *nolle prosequi* is a voluntary withdrawal by the prosecuting authority of present proceedings on a particular bill; and, at common law (it) is a prerogative incident to the sovereign. At common law it may be at any time retracted, and is *not only no bar to a subsequent prosecution on another indictment*, but it must become a matter of record in order to preclude a revival of proceedings on the original bill.

" It may, *at common law, be entered at any time before judgment;* and the practice is usual during trial, prior or after conviction, to enter it on objectionable counts, or parts of counts, so as to confine the verdicts to those which are good.

" Courts have, it is true, frequently held that the prerogative is one subject to their control, *while the cause is on trial,* and that the Attorney General has no right, after the jury is empaneled and witnesses called, to withdraw the case without their consent. (Our italics.)

"In some States no *nolle prosequi* is operative by statute without such consent.

"Be that as it may, if the case be withdrawn when on trial, without the defendant's consent, this operates an acquittal in all cases in which the defendant was in jeopardy at the trial." Wharton's Crim. Plead. and Prac., Sec. 383. (Our italics.)

Mr. Bishop treats the question very much in the same way, and says:

"The *nolle prosequi* can be entered at any stage of the cause *between the finding of the indictment and the sentence;* yet not after sentence or before, to the *prejudice of* any right of *the defendant.* * *
Therefore, it is commonly said that [at the stage at which an ac-

quittal will result] it can not be entered, *either with or without the consent of the court, unless the defendant consent, because he is entitled to a verdict."* 1 Bishop Crim. Prac., Sec. 1394.

These precepts are in keeping with the accepted interpretation and common practice in our courts; and we well understand that, of itself, a *nolle prosequi* is no bar, and that the prosecution may afterward be renewed at any time on a different indictment. But this effect of the *nolle prosequi* is strictly confined to the preliminary stages of a prosecution, before issue is joined on the merits; for, at the latter stage, it will operate as a bar to subsequent prosecution, as the learned author says.

Mr. Wharton does not, however, make it quite clear whether the *nolle prosequi* will operate as a bar if entered after verdict and before judgment, but Bishop does. He says:

"We see, therefore, that a *nolle prosequi* during the trial bars a subsequent prosecution for the same offence, whether on the same or another indictment. *A fortiori*, it does when entered between the *verdict and sentence*." (Our italics.) *Ibid.*, Sec. 1395; 1 Bishop Crim. Law, Sec. 1017.

And with regard to the rule which requires the *defendant's* consent, it evidently proceeds upon the theory that it will operate as a *waiver of the bar;* consequently, if he does not give his consent and thereby waive the bar of the *nolle prosequi*, it is not permissible for the prosecuting officer to enter it without his consent, even if the court gives its assent; because neither the District Attorney nor the court is authorized to *discharge* an accused after conviction.

Having made an extensive research into authorities on this question, we find it variously stated; and consequently we furnish extracts from some of the leading cases instead of making our own summary.

For instance, it was held in State vs. Smith, 49 New Hampshire, 155, that a *nolle prosequi* may be entered "before a jury is empaneled, and sometimes, while the case is on trial before the jury, with the consent of the respondent; and sometimes after the verdict is rendered against the prisoner."

But perhaps the broadest declaration of the principle is to be found in State vs. Smith, 67 Me., 328. The court say:

" It is well settled that the Attorney General may enter a *nolle prosequi* to the whole or any part of the indictment against the ob-

jection of the respondent, either before a jury is empaneled or after verdict. If entered after verdict, and the indictment is sufficient, the verdict will be a bar to any new indictment for the same offence."

That is an extreme version of the principles of the common law, notwithstanding the court rested its decision principally upon Massachusetts cases. In that case the defendant was prosecuted for murder on an indictment containing three counts, and the Attorney General, under special leave of the court, entered a *nolle prosequi* as to the second count in the indictment only.·

The *dicta* of that opinion would seem to be broader than the exigencies of the case required. In State vs. Keeps, 8 Ala. 951, it was said, that " when an indictment for a felony has been submitted to a jury upon the plea of not guilty, it is not for the court to permit a *nolle prosequi* to be entered (without the consent of the accused), that he may be again indicted for the same offence."

To the same effect are Gordon vs. the State, 44 Ala. 9, and Mount vs. State, 14 Ohio St. 295. And the three are in keeping with Wharton and Bishop.

In State vs. Roe, 12 Vermont, 93, the court very tersely say:

" The right of the government attorney to enter a *nolle prosequi* is suspended when trial commences to the jury. After that the power is to be exercised only by permission of the court."

In the United States courts the rule is about the same. And in United States vs. Watson, 7 Blatch. 60, it was said:

"A motion by the District Attorney, made before verdict, for· leave to enter a *nolle prosequi* on an indictment" was granted and approved.

And in United States vs. Schumaker, 2 McLean, 114, it was held that " there are some stages of a trial in which the right to enter a *nolle prosequi* clearly ceases; as after verdict of manslaughter on an indictment for murder," etc.

This is a decided modification of the doctrine announced in Smith's case, 67 Maine; and this decision precedes the latter in date many years. In Commonwealth vs. Briggs, 7 Pickering, 177, the court held that a *nolle prosequi* may be entered during the trial on a " matter distinct and independent of the principal charge in the indictment;" and then said "a *nolle prosequi* does not amount to an acquittal or bar, even when it goes to the whole indictment."

But that opinion is explained by the statement made in Commonwealth vs. Wade, 17 Pickering, 395, viz.: "There are some stages of a trial in which the right to enter a *nolle prosequi* clearly ceases, as after a verdict of manslaughter on an indictment for murder"— employing the identical language that was employed in Schumaker's case, 2 McLean.

This brings us to the consideration of the case of Commonwealth vs. Tuck, 20 Pickering, 356, of which a great deal has been said in argument. The court said:

"There are three periods of the prosecution in which a *nolle prosequi* may be entered—before the jury is empaneled, while the case is before the jury and after the verdict."

It is needless to repeat what was said in the opinion on the first two propositions; as it will suffice to say that it was in keeping with all other cases in that respect.

It is with the last, or third one, with which we are chiefly concerned; and on that subject the opinion says:

"After verdict of guilty is rendered the defendant is to be sentenced upon the motion of the Attorney General; and we have no doubt of his authority to enter a *nolle prosequi* after verdict. It can not operate to the injury of the defendant. If the indictment is sufficient, it saves him from the sentence of the law."

It is quite apparent that this opinion is not easily reconcilable with those in Briggs' case and Wade's case, *supra;* but when the carefully chosen words of the opinion in Tuck's case are considered, it amounts to about the same thing, for the court said that a *nolle prosequi* after verdict saved the defendant "from the sentence of the law;" but it was careful not to say that it operated a bar to future prosecution on another indictment for the same offence. That expression is the saving clause which preserves its consistency with the principle of the Lockwood case, the purport of which is, that the verdict of guilty is a "conviction," to be discharged from which the pardoning power must be exercised. It would have been manifestly inconsistent for the court to have held that a *nolle prosequi* after conviction would operate a complete bar also. That would be the equivalent of saying that the prosecuting officer possessed equal power with the Governor, without any provision of law, statutory or constitutional, to justify the pretension.

The court said in the Lockwood case that the question as to

whether the Governor had the power, under the Massachusetts constitution, to pardon a convicted person, between verdict and sentence, was for a long time in doubt; but that decision resolved that doubt in favor of the exercise of that power. And such has been the constant practice in that State since that decision. And what is more striking, no decision of that court, since the Lockwood case, has been cited—and we are quite confident not one can be found—which decides that the District Attorney may enter a *nolle prosequi* after conviction, under circumstances which operate a bar upon the face of the record.

Not only is this the theory of the law, but the respondent's return and accompanying exhibits show that the object had in view by the relator in tendering the motion to *nolle prosequi* was to discharge Bier from custody, that he might testify in certain other prosecutions, which are enumerated, freely, and without his testimony being discredited by virtue of his conviction.

But it is quite evident to our minds that the respondent would have just reversed the well established principle governing such a case, if he had permitted the relator to enter a *nolle prosequi* as he proposed to do.

In The Whiskey Cases, 99 U. S., the Supreme Court express themselves very plainly with regard to the rights of a *particeps criminis*, as they are defined in *Ex parte* Wells, 13 Howard, 307, a leading case on the subject—and said:

"Much attention appears to have been given the question in that case, and the court held that the only claim the accomplice had in such a case is an equitable one for pardon, and that only upon the condition that he makes a fair and full disclosure of the guilt of himself and that of his associates; that he can not plead it in bar of an indictment against him, nor use it in any way to support a motion to put off the trial in order to give him time to apply for a pardon," p. 601.

In support of that proposition, amongst others, the court cite the following cases, viz.: Rex vs. Rudd, 1 Leach, 125; Rex vs. Gursede, 2 Av. & N. 375; People vs. Whipple, 3 N. Y. 707; 1 Chitty's Crim. Law, p. 82; 3 Russell on Crimes, pp. 597, 598; 1 Phillips on Ev., p. 86; 1 Bishop Crim. Prac., Sec. 1076; Common. vs. Knoop, 10 Pickering, 477; United States vs. Lee, 4 McLean, 103.

Proceeding, the court then very pointedly say:

" Considered in its full scope, the argument is that in considera-tion of the defendant's testifying against their co-conspirators, who were indicted for defrauding the revenue, they, the defendants, should have a full and complete discharge," etc.

And their conclusion being that the District Attorney had no right to consent to such discharge, the defendant's demurrer was dis-allowed and refused.

The opinions of authors are in perfect accord with that expressed by the court, as will be instanced by the following, viz.:

" Though an accomplice, when called as a witness by the State, makes a clean breast and exhibits all the facts in the case, however criminatory, he is not, in law, entitled to a pardon, nor can he plead the fact that his testimony was so invited and so used in bar of a prosecution against him for the offence he confessed when on the witness stand. His claim to pardon depends exclusively on the ex-ecutive discretion." Whar. Crim. Ev., Sec. 443.

Thus we are brought to face the proposition that the relator pro-poses to make use of the *nolle prosequi*, after the conviction of Bier has become a finality, and, consequently, within the scope of the pardoning power of the executive, to accomplish his discharge from custody before he has made the promised disclosures, and without the leave of the court—disclaiming the right of the presiding judge to refuse the filing of his motion.

Notwithstanding an attentive examination of adjudicated cases we have found no case in which such a doctrine has been announced.

### III.

Much stress has been laid upon the proposition by the relator in argument that the prosecuting officer in England has the right to enter a *nolle prosequi* at will, without the consent or control of the court, and, consequently, he has the same right, under Revised Statutes, Sec. 976, which adopts the principles of the common law of England for the government of criminal proceed-ings, in so far as same are not controlled by positive legislative enactment.

In the courts of England prosecutions are set on foot by private prosecutors, and the right to enter a *nolle prosequi* is a " prerogative incident to the sovereign," whilst in this State prosecutions are pro-

9

vided for in the organic law, which declares that "prosecutions shall be by indictment or information," and that "no person shall be held to answer for a capital crime, unless on presentment or indictment by a grand jury." Const., Art. 5.

The offices of Attorney General and District Attorney for the parish of Orleans are established and their qualifications prescribed by the organic law. Const., Arts. 94 and 134.

The duties of the Attorney General are prescribed by statute (Rev. Stats., Secs. 131 to 138), and those of District Attorney are found in Secs. 1140 to 1170, inclusive.

It is, by positive mandate of the statute, made the duty of the Attorney General "to appear for the State in all prosecutions," particularly designating them. *Id.*, Sec. 131.

And it is made the duty of the District Attorney to attend the sessions of the court, and represent the State in all civil and criminal actions. *Id.*, Sec. 1143.

The law provides that "prosecutions for offences not capital may be by information, with the leave of the court first obtained." *Id.*, Sec. 977.

And, in immediate connection with the foregoing—in the same chapter—the statute declares that it "*shall be lawful* for the Attorney General, District Attorney or District Attorney *pro tempore* to enter a *nolle prosequi*." *Id.*, Sec. 990. (Our italics.)

These are the statutory limitations which are placed upon the provisions of Sec. 976, which declares that "all proceedings whatsoever in the prosecution of crimes and misdemeanors * * * shall be according to the common law, unless otherwise provided."

The courts and prosecuting officers constitute component parts of the judicial department of the State government, but each one of them is subordinated by statutory regulations which are prescribed for their guidance and control.

It is quite evident from the foregoing that criminal prosecutions in this State are quite different from those in England, and, also, that the power of the prosecuting officer is greatly diminished. The declaration that "it shall be lawful" for the District Attorney to enter a *nolle prosequi* is quite significant. That is not the statutory delegation of an *absolute* power in the prosecuting officer to enter a

*nolle prosequi* at will.   On the contrary, it is permissive only, and seems to imply that the exercise of that power is held in subordination to the sound judicial discretion of the trial judge.

It is a general and accepted theory of statutory interpretation—in criminal as well as in civil matters—that laws *in pari materia* must be construed together.   On this principle that section of the Revised Statutes which provides that " prosecutions for offences not capital may be by information, with the leave of the court first obtained " (977), must be construed so as to harmonize with that section which declares that " it shall be lawful " for the prosecuting officer to enter a *nolle prosequi* (990).

The power to inaugurate and the power to discontinue a prosecution run on parallel lines—*in pari passu.* One is quite as much under the advisory control of the presiding judge as the other.

Mr. Wharton announces the general American doctrine to be, that " the prerogative is one which is subject to the control of the (court) *while the case is on trial;"* and that the " *prosecuting officer has no right after the jury is empaneled,* and witnesses called, to withdraw the case without the consent of the court."   (Our italics.)

The rule in the United States courts is the same, for in treating of the right of the District Attorney to enter a *nolle prosequi* it was said, in United States vs. Corrie, 1 Brummer's Collected Cases, 686:

" His control over and direction of cases thus committed to his charge is exclusive until they come under the control of the court. Practically, however, the discretion of the District Attorney in relation to the case and its discontinuance, until the trial has commenced, is free as before.   This difference, however, is always recognized, that in that control the District Attorney acts with the express assent or tacit acquiescence of the court."

The foregoing opinion is in keeping with the greater part of the authorities we have cited *supra,* and with the weight of other American authorities.

It is sound in principle, correct in practice and in keeping with our laws and jurisprudence.

In State vs. Hornsby, 8 R. 554, it was very justly observed by Nicholls, Justice, as organ of the Court of Errors and Appeals:

" Formerly in England the judges felt themselves constrained to

adhere so strictly to form that public justice was in many cases evaded and most dangerous malefactors let loose upon society, in consequence of the omission of some senseless and meaningless form. The failure on the part of the prosecution to dot an i or cross a t, or something equally absurd, was considered sufficiently fatal to vitiate the whole proceeding; substance was sacrificed to form, or rather form became substance, and substance mere form."

But the learned justice congratulated the court, that that sort of thing had become obsolete in England as well as in America.

In keeping with that observation, the same case was again presented to and decided by the same court, and in the course of their opinion they reviewed and determined the identical question presently under consideration, and said:

"After much investigation in the case of the State vs. Brown, decided by this court, *ante* p. 566, we held 'that the Attorney General may, at any time before the defendant has been actually tried, on application to the court, have an indictment quashed, if the prosecution is in good faith, and not instituted from malicious motives or for the purposes of oppression, and that the presiding judge will take care to prevent abuse and oppression, by not permitting a capricious, arbitrary or malicious exercise of the power.' Upon a view of all the authorities bearing on the question we are satisfied that at all stages of a criminal prosecution before a jury is empaneled, the Attorney General possesses an arbitrary control over his indictments, and that he may enter a *nolle prosequi* as to them t pleasaure, without the consent of the court or of the accused.   *   *   *

" But when the jury has been charged with the trial of the case, this right of the Attorney General is suspended, or at least qualified, and can not be exercised against the consent of the court, which will in no case grant it, if the defence appears ample, or if the motion appear not to be in good faith and to promote the ends of justice.

"This right may be exercised, even after conviction, when it is clear that no judgment can be pronounced on the verdict, on account of defects in the indictment."

This is a terse, plain statement of the law as it is administered in Louisiana, and it needs no amplification at our hands.

These decisions are not different from the decision in State

vs. Bugg, 6 R. 63, the *nolle prosequi* in that case having been entered at the preliminary stage of the prosecution, when the District Attorney had absolute control " over his indictments."

State vs. Hunter, 14 An. 71, says nothing to the contrary. The Brown and Hornsby cases are in accord with State vs. Banton, 4 An. 31, in which the court said:

" The second point presented is elaborately examined in the cases of Comm. vs. Tuck, 20 Pick. 364, and in Comm. vs. Briggs, 7 Pick. 177, and the reasoning and authorities upon which they maintain the right of the Attorney General to enter a *nolle prosequi* upon one count of an indictment, and to claim judgment upon the remaining counts, after a general verdict, appear to us conclusive."

That opinion accords exactly with our own appreciation of the opinion of the Massachusetts court in the Tuck case, and that is widely different from the issue tendered to the respondent, of permitting the relator to enter a *nolle prosequi* and discharge a defendant who has been convicted of a felony upon a valid indictment.

So the court said, in State vs. Crosby, 4 An. 434, that a *nolle prosequi* may be entered upon one count of an indictment, and a judgment claimed on the remaining count, even after a general verdict. State vs. Schoenhausen, 26 An. 421, follows the same rule.

In State vs. Christian, 30 An. 367, it was held that when the accused, who is charged in one indictment with burglary and grand larceny, has been convicted of burglary the entry of a *nolle prosequi* as to the charge of grand larceny will not warrant an arrest of judgment.

In State vs. Byrd, 31 An. 419, it was held that a *nolle prosequi*, and the consequent discharge of the prisoner, is not a bar to a subsequent indictment for the same offence; and when there are two counts a *nolle prosequi* of the first one does not bar a prosecution on the second. So when on an indictment for murder the prisoner is convicted of manslaughter, and a new trial is obtained, a *nolle prosequi* may be entered as to the charge of murder, and a new indictment be preferred for manslaughter.

In State vs. Washington, 33 An. 1473, it was held that where two or more persons are jointly indicted, one as principal and the other parties as accessories, and they have plead to the indictment and

have been put on their trial together under it, and after the jury has been impaneled in behalf of the State, the District Attorney offers to enter a *nolle prosequi* as to the alleged accessories, the accused have the right to oppose the motion, and to insist that the jury be permitted to return a verdict on their plea.

And in the recent case of State vs. Washington, 43 An. 919, it was held that in case a party is charged with burglary and larceny in one count, and is tried and found guilty as charged, and thereafter files a motion for a new trial on the sole ground that the proof adduced was insufficient to sustain the indictment for burglary; *Held*, that at this stage of the proceedings it was competent and admissible for the District Attorney to enter a *nolle prosequi* as to the charge of burglary, and prevent a new trial being granted.

But the relator, in opposition to the foregoing, cites and relies upon several decisions.

In Farrar vs. Steele, an intrusion suit, 31 An. 640, the court, in expressing an opinion in reference to the duties and powers of prosecuting officers, said:

"This court has twice decided that a District Attorney, on behalf of the State, may enter a *nolle prosequi* at his discretion, subject only to the rights of the defendant, after the trial has commenced and evidence given, to insist on a trial. In this respect neither the court nor the accused has the right to control the attorney for the State. 6 R. 63; 8 R. 583."

We have already quoted extracts from these cases, *supra*, and found that they sustain the proposition, which is everywhere conceded, that the prosecuting officer has absolute control over his indictments before issue is joined and the trial begun. State vs. Prierre, 38 An. 91, is to the same effect.

In State *ex rel.* Hall, District Attorney, vs. Judge, 33 An. 1222, the right to enter a *nolle prosequi* was not involved, but it was therein decided that the trial judge had not the right to withhold his consent for the District Attorney to file an information on the ground that the statute under which he was proceeding was unconstitutional; the court holding that no law of the State, nor adjudication of this court could be found which gave the judge any discretion in the matter.

That decision is in exact accord with the two cases last cited and

emphasizes the absolute and unlimited control of the prosecuting officer "over his indictments" in the *preliminary* stages of a prosecution.

State vs. Cole, 38 An. 844, proceeds upon the same lines and supports the same theory.

The foregoing is a complete synopsis of the jurisprudence of this court on the subject of *nolle prosequi*, and with the principles therein announced kept in view, it can safely be affirmed that the Hornby and Brown cases have never been overruled. That in *no case* has the District Attorney's right to enter a *nolle prosequi* been made to depend on the *consent of the defendant;* but that, after issue joined, it has been invariably made to depend upon the *permission of the court.* It can not be perceived, either on reason or authority, why a District Attorney should have an *absolute* right to enter a *nolle prosequi* at any and all stages of a prosecution, and discharge from custody persons who have been convicted of felonies. But, as an illegal count in an otherwise valid indictment may be eliminated by a *nolle prosequi* after a verdict of guilty, to prevent the allowance of a new trial, it would seem that this could not be done otherwise than *by consent of the court upon whose judgment action depended.*

Likewise, in a case where conviction disqualifies, the *nolle prosequi* must necessarily depend upon the same conditions; as, in either case—the legality of an indictment or the competency of an accomplice to testify—a question is presented for the judge to decide, before the *nolle prosequi* becomes necessary, or *can* be filed.

For, as we have seen, there is no event in which it can be employed except for the purpose of overcoming some legal impediment to the course of justice and before conviction has become complete; for once the conviction is completed and all of the declinatory pleas and motions are disposed of, the pardoning power supervenes and nothing other than its exercise can release a convicted person.

Confessedly, Bier was indicted for the crime of perjury, a penitentiary offence. He was found guilty by the verdict of a jury. He applied for a new trial, and that was overruled. Subsequently he made a confession which operates as an acquiescence in the verdict.

Under this state of facts there can be no doubt of the finality of the conviction.

That the *nolle prosequi* tendered in the court of the respondent means the discharge of Bier from custody is apparent on the face of relator's motion, for it announces to the respondent that he "gives. the court here to understand and be informed that he now enters a *nolle prosequi* 'in the case of the State vs. Bier,' and prays that he be discharged without a day."

Notwithstanding we have made diligent search, no one has been found which bears any just analogy to the instant case; no one in which a prosecuting officer was permitted to enter a *nolle prosequi* after the conviction had become a finality and the pardoning power attached—the proceedings being regular and the indictment valid. In neither Smith's case, in the court of Maine, nor in Tuck's case, in the court of Massachusetts, in which the power of the prosecuting officer was pushed to the furthest extreme, was the whole indictment quashed, or the convicted defendant released. On the contrary, the *nolle prosequi* was employed in each of those cases for the express purpose of discharging one or more counts of the respective indictments so that the conviction of the defendants on other counts should be placed beyond the peradventure of doubt.

It has never been recognized in this court as a means of securing pardon for the convicted defendant.

The result of this investigation has led us to the conclusion that there are three stages of a criminal prosecution, viz.:

1. The inauguration or preliminary stage, when the prosecuting officer has absolute control of his indictments.

2. The trial of the cause and its incidents, during which the court has control and the power of the prosecuting officer is suspended.

3. The period between the verdict of the jury and the sentence by the court, when the pardoning power comes into operation.

Placing our opinion on these lines and resting our judgment on the propositions of law which must govern the judge and District Attorney in the premises, we are relieved of the duty of inquiring into the facts brought forward in the return any further than has been found necessary to solve the questions of the law involved.

We shall, consequently, omit discussion of Bier's consent to or ac-

quiescence in the proceedings in the respondent's court; and the further question as to whether the proposed discharge would operate a bar to further prosecution under another indictment for the same offence.

Of course, they could not be decided in a *mandamus* proceeding, which we are called upon to employ in the exercise of the *supervisory* jurisdiction of this court.

It suffices for us to say that Bier is not a party to this suit, either as relator, respondent or intervenor; and his cousel have not joined the standard of either relator or respondent. It is evident that *proof* of the question of Bier's consent or his waiver and renunciation—if any such there be—are matters *in pais* which can arise and be judicially determined only when a future prosecution shall be presented.

Our decision of them, in an issue between the judge and District Attorney of the court in which Bier is prosecuted, would not be jurisdictional, and would not operate as either *res judicata* or an estoppel for or against him personally.

## IV.

Finally, we are confronted with the question whether the respondent judge has been derelict in the discharge of any duty which the law has cast upon him in the premises: or, in other words, did he, as the relator alleges, "arbitrarily and unwarrantably" refuse to allow his motion to *nolle prosequi* the convicted defendant to be filed and spread upon the minutes of his court?

Notwithstanding the proposition has been pressed upon our attention in argument, supported by the citation of numerous authorities, that the mere filing of the paper which was tendered for filing, or the failure of the clerk to make the proper endorsement thereon, does not defeat the filing in point of fact—the paper having been *deposited* with the proper officer and placed among the records of the court—but the position assumed and the authorities cited do not apply to the facts of this case.

The motion to enter a *nolle prosequi* was tendered by the District Attorney, accompanied by the request that it be filed; but that request was refused by the respondent. The minute entry of the clerk

shows that fact. Had the paper been actually filed, or directed by the court to be filed, and that fact not evidenced by an appropriate endorsement, the act would, within the meaning and intendment of the authorities cited, have been taken for the fact.

Entertaining that idea, doubtless, the respondent declined to allow the motion to be filed in the record of State vs. Bier. In fact, it forms no part of it; though, out of the abundance of caution, the respondent has made same an exhibit and annexed it to his return for personal inspection by this court. Indeed, the motion was not intended for the respondent to act upon at all. It purports, simply, to inform the court that relator had exercised a legal right and entered a *nolle prosequi*, the effect of which would have been to release Bier from custody. In tendering his motion in that shape, the relator's evident intention was to act independently of the court, and have the *nolle prosequi* operate as a discharge of Bier from custody, as soon as it should have been spread upon record, despite the will or consent of the court. This fact is exhibited by the averments of the motion; and it is further illustrated by the relator's insistence in his printed brief.

It is evident that the filing of the motion was expected, of itself, to make the discharge of Bier effectual, on the theory, doubtless, that the power, having been once exercised, could not be subsequently recalled by the court.

It was not a motion of the kind which invited or solicited action by the court preliminarily to give it effect; hence, it was not of the respondent's simple failure to perform a purely ministerial duty that relator complains, but of his failure to exercise a legal discretion, with which the law has clothed him, and decide a question favorable to the view he entertained; for relator's motion proceeded upon the theory that he had the power, under the law, to enter a *nolle prosequi* after the verdict of conviction, the effect of which would be to "discharge Bier without day," without the consent of the respondent; and we have found that such a power did not exist. Hence, the respondent not only exercised his judgment in the premises, but exercised it correctly, and is not, therefore, amenable to the relator's charges.

Entertaining the view we have expressed of the law, and being advised of the purpose which relator had in view, it is manifest that

there was no ministerial duty imposed upon respondent, the performance of which can be coerced by our writ of *mandamus*.

In treating of *mandamus* to inferior courts, Mr. High says:

" That in all matters relating to the jurisdiction of the inferior court, and upon which it has acted in a judicial capacity, *mandamus* will not lie to review its proceedings, or to revise its rulings," etc. High's Ex. Legal Rem., Sec. 150.

" That in all matters resting within the discretion of the inferior tribunal, *mandamus* will not lie to control or interfere with the exercise of such discretion." *Ibid.*, Sec. 156.

The writ " is exercised with the utmost caution, lest there should be any improper interference with the exercise of the judicial powers of the court below, and it will only be used in such manner as to leave the inferior tribunal untrammeled in the exercise of the discretionary or judicial powers, with which it is properly vested by law." *Id.*

" But it not infrequently happens that duties devolve upon courts or judges, either by operation of law or by positive statute, which partake more of a ministerial than of a judicial nature, and when the duty is so plain and imperative that no element of discretion can enter into its performance.

"And while the courts uniformly refuse to interfere with the discretion of inferior tribunals in the performance of their duties, yet as to acts to be performed by a court or judge, in a merely ministerial capacity, or as to duties which are obligatory upon them by express statute, and as to which there can be no dispute, and no element of discretion, *mandamus* is an appropriate remedy, and will be granted to compel the performance of the act or duty." *Ibid.*, Sec. 231.

This rule was recognized and enforced by this court in State *ex rel.* Daboval vs. Police Jury, 39 An. 759.

The question at once arises, what is the act which the respondent is required to perform in a merely ministerial capacity, or the duty which is obligatory upon him by express statute, as to which there can be no dispute, and no element of discretion?

We have clearly demonstrated that the judge was not called upon by the motion to act at all. The District Attorney disavowed the right and authority of the judge to act in the premises, contending that the power was exclusively vested in him to enter a *nolle prosequi*

and discharge the accused. Questioning the relator's assumption of power, respondent denied that any legal duty was imposed upon him, and declined to permit its consummation by permitting the motion to be placed among the records of his court.

In State *ex rel.* Hall, District Attorney, vs. Judge, 33 An. 1222, the respondent was required by the writ of *mandamus* to permit relator to file an information with the leave of the court. The simple act of filing the information was the act to be performed, and a positive statute imposed the duty. The judge had no discretion.

In this case we have found, as matter of law, that after conviction the District Attorney had not the power to enter a *nolle prosequi;* hence, there is no ministerial duty imposed upon the respondent judge, by statute, to compel him to permit relator to enter it.

In State *ex rel.* Jumel, Auditor, vs. Johnson, 29 An. 399, the simple act of causing a petition and bond for the removal of the cause to be filed was the ministerial duty respondent was compelled by *mandamus* to perform. State *ex rel.* Mentz vs. Clinton, Auditor, 28 An. 47; State *ex rel.* Longstreet vs. Johnson, Auditor, and Dubuclet, Treasurer, 28 An. 932; State *ex rel.* Hope & Co. vs. Board of Liquidation, 42 An. 654, 656; Mossy vs. Harris, Tax Collector, 25 An. 564; 25 An. 330.

Having examined this application in all its bearings and applied to the issues involved all the authorities at our command, we have reached the conclusion that the relator is not entitled to a peremptory *mandamus*.

It is therefore ordered and decreed that the preliminary order herein granted be set aside, and it is further ordered that relator's application be denied at his cost.